THE DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CHRISTOPHER PABLO PAULINO,

Defendant.

Criminal Case No. 10-00062

**ORDER RE: MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A *FRANKS* HEARING**

This case is before the court on a Motion to Suppress Evidence ("the Motion") and a Request for a *Franks* Hearing ("the Request") filed by Defendant CHRISTOPHER PABLO PAULINO ("Defendant"). *See* Docket Nos. 14, 43. After reviewing the filings and relevant case law, and hearing oral argument, the court hereby **DENIES** the Motion and the Request and issues the following opinion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On February 12, 2010, an anonymous caller informed Drug Enforcement Administration ("DEA") that Defendant was in the Philippines and that Defendant would attempt to smuggle methamphetamine ("ice") into Guam by concealing the ice "in his ass." Docket No. 14 at 12–13.

At approximately 1:55 a.m. on February 20, 2010, an anonymous caller notified Customs that Defendant was arriving on Guam that day from the Philippines and was attempting to smuggle ice into Guam by concealing the ice "up his ass." *Id.* at 13. At 4:36 a.m. that same day, Defendant

arrived at Guam's A.B. Won Pat International Airport on a flight from the Philippines. *Id.*

Defendant and the other passengers on the flight proceeded to the Customs inspection area. *Id.* Customs Officers and a drug detector dog were surveying the Customs inspection area. *Id.* While the drug detector dog was sniffing passengers in line for Customs Counter 17, a United States Customs Enforcement special agent and a Guam Customs officer both observed Defendant move from the line for Customs Counter 17 to the line for Customs Counter 19. *Id.* At approximately 5:00 a.m., the drug detector dog sniffed Defendant and the dog "reacted with a positive alert indicating the presence of a narcotic odor." *Id.* at 13–14.

Subsequent to the drug detector dog's positive alert, Customs interviewed Defendant and subjected him to a Customs Secondary Inspection. *Id.* at 14. While Customs Officer Jeffrey T. Palacios ("Officer Palacios") was inspecting Defendant's bag, he observed Defendant rubbing his arms, pacing in front of the inspection counter, and "continually rubbing his buttocks." *Id.* Customs officers then subjected Defendant to a strip search, but did not find any contraband. *Id.*

Based on the foregoing facts, Officer Palacios applied for a warrant to submit Defendant to an x-ray examination, and contingent upon positive x-ray results, to conduct a body cavity search of Defendant or require Defendant to ingest an emetic. *Id.* At approximately 11:30 a.m., Judge Elizabeth Barrett-Anderson of the Superior Court of Guam issued the x-ray warrant. *See id*. at 16–17. Pursuant to the warrant, Defendant was transported from the airport to Guam Memorial Hospital ("GMH") for the x-ray examination. *See id.* at 4.

Dr. Aaron Johansen conducted an x-ray examination of Defendant at about 1:47 p.m.; the x-ray results indicated that there was a foreign object in Defendant's rectal area. *Id.* Following the positive x-ray results, at approximately 3:25 p.m., Defendant was given a laxative to drink. *Id.* At 5:39 p.m., Defendant refused to ingest any more medication until he spoke to his attorney. *Id.* At 6:45 p.m., Defendant was discharged from GMH before he had a bowel movement. *Id.* at 5. Defendant was transported to Tiyan Customs Office and placed in a holding cell at approximately

7:20 p.m. *Id.*

At noon on February 21, 2010, Defendant still had not passed the foreign object that was in his rectal area. *Id.* Assistant Attorney General Basil O'Mallan advised Customs officers that they would need to release Defendant by 6:00 a.m. the following morning if he did not appear before a Magistrate. *Id.* At approximately 5:00 p.m. on February 21, Defendant appeared before Judge Barrett-Anderson to be arraigned for possession of a controlled substance. *Id.*; *see also* Docket Nos. 14 at 18, 16 at 2:12–14. Judge Barrett-Anderson continued the arraignment and ordered that Defendant be detained. Docket No. 16 at 2:14.

On the afternoon of February 22, 2010, Defendant was arraigned and charged with possession of a controlled substance. *See* Docket Nos. 13 at 3, 14 at 18, 17 at 1:26–27. That same day, at approximately 7:06 p.m., Defendant had a bowel movement and passed the foreign object, which was determined to be ice. *Id.* at 14–15.

On October 6, 2010, Defendant was indicted in this court and charged with importing approximately 9.4 grams of ice, in violation of 21 U.S.C. §§ 952 and 960. Docket No. 1.

## II. DISCUSSION

### A. SUFFICIENCY OF THE AFFIDAVIT IN SUPPORT OF THE X-RAY WARRANT

Defendant moves the court to suppress the x-ray examination results and all evidence derived from the x-ray examination—the "fruits" of the x-ray examination—on the ground that the warrant for the x-ray of Defendant's body was improper. Docket No. 14 at 8. Specifically, Defendant argues that the warrant lacked probable cause because it was primarily supported by an unreliable, anonymous informant, and thus violated his Fourth Amendment rights. *Id.*

### B. APPLICABLE STANDARDS

The Fourth Amendment prohibits unreasonable searches and seizures and requires that warrants for searches and seizures be supported by probable cause. U.S. CONST. amend. IV.

However, the standard for the reasonableness of a search at the international border[1] differs from the standard for searches that take place in the interior. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). At the border, an individual's Fourth Amendment rights must be balanced against the government's interest in protecting the nation's borders and preventing the permeation of contraband, and the Government's interest must be given more weight. *Id.* at 539–40.

At the international border, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant , . . ." *Id.* at 538 (citing *United States v. Ramsey*, 431 U.S. 606, 616–19 (1977)). However, non-routine border searches—such as involuntary x-ray searches—must be based on reasonable suspicion. *See United States v. Camacho*, 368 F.3d 1182, 1185–86 (9th Cir. 2004). Under the reasonable suspicion standard, "officials at the border must have a 'particularized and objective basis for suspecting the particular person' of [body cavity] smuggling." *Montoya de Hernandez*, 473 U.S. at 541–42 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Although neither a warrant nor probable cause is required to conduct a border x-ray search, in the Ninth Circuit, there is a strong preference that customs officers obtain a warrant prior to conducting such an intrusive search. *See United States v. Ek*, 676 F.2d 379, 382 (9th Cir. 1981) (citing *United States v. Cameron*, 538 F.2d 254, 258–59 (9th Cir. 1976)). Accordingly, an affidavit supporting a border x-ray search need only establish a reasonable suspicion of body cavity smuggling to be upheld; probable cause is not required. *See id.* at 383 (finding that a magistrate need only find a clear indication of body cavity smuggling to support a border x-ray warrant); *see*

---

[1] An international airport is the functional equivalent of a border. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272–73 (1973) ("For another example, a search of the passengers and cargo of an airplane arriving at St. Louis after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search.").

Page 4

*also Camacho*, 368 F.3d at 1186 n.1 (citing *Montoya de Hernandez*, 473 U.S. at 540–41) (recognizing the Supreme Court's disapproval of the clear indication standard and adopting the reasonable suspicion standard for nonroutine border searches).

A standard of reasonable suspicion is lower than that of probable cause and "can arise from information that is less reliable than that required to show probable cause." *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)) (internal quotation marks omitted). To determine if a warrant is supported by reasonable suspicion, the issuing magistrate must look at the totality of the circumstances. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). That is, the issuing magistrate must look at "the content of information possessed by [border officials] and its degree of reliability." *Id.* (quoting *White*, 496 U.S. at 330). When reviewing the sufficiency of an affidavit, the court must "ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed," or in this case that reasonable suspicion existed. *United States v. Krupa*, 633 F.3d 1148, 1151 (9th. Cir. 2011) (quoting *Gates*, 462 U.S. at 238) (internal quotation marks omitted) (alterations in original). When reviewing the warrant affidavit the court must bear in mind that the "magistrate's determination of probable cause [or as is the case here, reasonable suspicion] should be paid great deference." *Id.* (citing *Millender v. Cnty. of Los Angeles*, 620 F.3d 1016, 1025 (9th Cir. 2010)).

## B. THERE WAS A SUBSTANTIAL BASIS TO SUPPORT A FINDING OF REASONABLE SUSPICION

Defendant argues that the anonymous informant was unreliable, thus making the warrant improper. *See* Docket No. 14 at 7. In *Ek*, the defendant attacked the affidavit supporting an x-ray warrant as improper because it did not sufficiently show that the informant was reliable as required under *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969). 676 F.2d at 383. The Ninth Circuit rejected the defendant's argument on the ground that the *Aguilar-Spinelli* informant standards were not applicable because the warrant did not need to be supported by probable cause. *Id.* The court held that the warrant was proper because the affidavit

in support contained sufficient information for the magistrate to find a clear indication[2] of body cavity smuggling. *Id.*

Defendant's argument is the same as the argument that failed in *Ek*. As in *Ek*, the informant in this case does not need to meet the reliability standards of *Aguilar-Spinelli* to uphold the warrant. Rather, the warrant may be upheld so long as the affidavit contained facts sufficient for the issuing magistrate to find a reasonable suspicion that Defendant was smuggling ice in his rectal area.

Body cavity smuggling presents few external signs, and the government's interest in preventing the smuggling of contraband at the border is high. *Montoya de Hernandez*, 473 U.S. at 541. Looking at the totality of the circumstances—anonymous tips to authorities which were corroborated when Defendant arrived from the Philippines then further bolstered by Defendant's evasive actions and the positive alert from the drug detector dog— the court finds that Judge Barrett-Anderson had a substantial basis from which to find a reasonable suspicion that Defendant was concealing ice in his rectal area.[3]

//

---

[2] As discussed earlier in the analysis, the reasonable suspicion standard has since replaced the clear indication standard. *See supra* at 4:11–5:8.

[3] The court notes that Judge Barrett-Anderson applied a standard of probable cause when she issued the warrant. *See* Docket No. 14 at 16. As explained by the Ninth Circuit, "probable cause means fair probability." *Krupa*, 633 F.3d at 1151 (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)) (internal quotation marks omitted). "[W]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question, for which [n]either certainty nor a preponderance of the evidence is required." *Id.* (quoting *United States v. Kelley*, 482 F3d 1047, 1050 (9th Cir. 2007)) (second alteration in original) (internal quotation marks omitted).

The court finds that even it were to review the warrant under the higher standard of probable cause, the supporting affidavit would still be sufficient. Looking at the totality of the circumstances, there was a substantial basis from which Judge Barrett-Anderson could find that there was a fair probability that Defendant was concealing ice in his rectal area.

## II. *FRANKS* HEARING

Defendant also requests that the court hold a *Franks* hearing to determine the validity of the x-ray warrant on the ground that there was a material omission in the supporting affidavit. The Government opposes the motion and argues that Defendant's motion is barred by the doctrine of collateral estoppel. Docket No. 45 at 3:5–4:8. Because the issue of collateral estoppel could dispose of the motion without an analysis of its merits, collateral estoppel is addressed first.

### A. COLLATERAL ESTOPPEL DOES NOT APPLY

The Government argues that Defendant's request for a *Franks* hearing is barred by the doctrine of collateral estoppel because the issue was decided in the Superior Court of Guam. *See* Docket No. 45 at 3:5–4:8. In Defendant's local Guam case concerning the same alleged ice smuggling incident, Defendant requested a *Franks* hearing based upon the same omission argument that Defendant now presents to the court. In that case, the superior court judge found that the Defendant "failed to make a substantial preliminary showing of a false statement" and denied the request. Docket No. 34-1 at 10:7–12.

The doctrine of collateral estoppel bars the relitigation of "an issue of ultimate fact" that has "been determined by a valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The decision of the local Guam court is binding on this court only if it would be binding under Guam collateral estoppel law. *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1121 (9th Cir. 1997) (citing *Haring v. Prosise*, 462 U.S. 306, 313–14 (1983)).

Under Guam law, to determine if collateral estoppel applies the court must—

(1) [Identify] the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

(2) [Examine] the record of the prior case to decide whether the issue was 'litigated' in the first case; and

(3) [Examine] the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*People v. Angoco*, 2004 Guam 11 ¶ 10 (quoting *People v. San Nicolas*, 1999 Guam 19 ¶ 15).

The Government contends that the local court decision collaterally estops Defendant from requesting a *Franks* hearing in this case because "the issues are identical; both parties had full opportunity to litigate them; and Judge Bordallo rejected defendant's position." Docket No. 45 at 4:6–7. The Government's assertions are true; however, its argument for the application of collateral estoppel must fail if the local court's decision was not a final judgment. *See Ashe*, 397 U.S. at 443.

Guam law is silent as to whether a suppression hearing without a subsequent conviction or acquittal is a final judgment for the purposes of collateral estoppel. "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Med. Lab. Mgmt. Consults. v. Am. Broad. Cos., Inc*., 306 F.3d 806, 812 (9th Cir. 2002) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000)) (internal quotation marks omitted).

The Guam Supreme Court cites California case law in its discussion of collateral estoppel. *See Angoco*, 2004 Guam at ¶ 8. Thus, it is reasonable to turn to California law for guidance. Under California law, a suppression hearing that is not followed by an acquittal or a conviction is not a final judgment for purposes of collateral estoppel. *Lombardi*, 117 F.3d at 1121.

In this case, the Guam Superior Court's suppression ruling was not followed by an acquittal or a conviction. Thus, the Guam court's decision to deny Defendant's request for a *Franks* hearing is not a final judgment. Accordingly, the doctrine of collateral estoppel does not apply, and the court will independently consider the merits of the Request.

**B. *FRANKS* HEARING APPLICABLE STANDARDS**

Upon request of a defendant, the court must hold a hearing to determine the validity of a warrant if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and

Page 8

if the allegedly false statement [was] necessary to the finding of [reasonable suspicion][4] . . . ." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). A defendant may also be entitled to a *Franks* hearing to challenge a warrant supported by an affidavit that "contains deliberate or reckless omissions of facts that tend to mislead." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) (citing *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984)).

In determining whether to hold a *Franks* hearing, the court must bear in mind that "there is 'a presumption of validity with respect to the affidavit supporting the search warrant,' and also that 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side [or, in the case of an omission, is included in the affidavit], there remains sufficient content in the warrant affidavit to support a finding of [reasonable suspicion],[5] no hearing is required.'" *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987) (quoting *Franks*, 438 U.S. at 171–72).

## C. A *FRANKS* HEARING IS NOT WARRANTED

Defendant claims that it was a material omission for Officer Palacios to omit from his affidavit the fact that there were two drug detector dogs at the airport when Defendant arrived and that one of the dogs did not respond to Defendant with a positive alert. Docket No. 43 at 1–2. The court is unpersuaded by Defendant's argument.

The fact that one drug detector dog may not have responded with a positive alert does not negate the fact that another drug detector dog did respond with a positive alert. Nor does it weaken the fact that an anonymous informant alerted authorities that Defendant would attempt to smuggle ice into Guam or the fact that authorities observed Defendant engage in evasive conduct. Thus, even if the omitted facts were included in the affidavit, the affidavit would still support a finding

---

[4] The original language requires "probable cause," but as discussed earlier, the affidavit in this case need only be supported by reasonable suspicion. *See supra* at 4:11–5:8.

[5] *See supra* at 9 n.4.

Page 9

of reasonable suspicion that Defendant was attempting to smuggle ice into Guam by concealing it is rectum.

Assuming arguendo that Officer Palacios was aware of the omitted facts, his omission of the facts does not warrant a *Franks* hearing because the omission does not tend to mislead. *See Stanert*, 162 F.2d at 781 ("[T]he Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead."). Defendant has failed to make a substantial preliminary showing that there was a material omission in the warrant affidavit. Accordingly, the court finds that a *Franks* hearing is not warranted.[6]

### III. CONCLUSION

Based on the foregoing discussion, the court finds that the affidavit in support of the x-ray warrant provided a substantial basis upon which the issuing magistrate could find a reasonable suspicion that Defendant was concealing ice in his rectal area. The court further finds that there was not a material omission in the affidavit in support of the x-ray warrant.

Accordingly, the court hereby **DENIES** the Motion to Suppress Evidence and the Request for a *Franks* Hearing.

**SO ORDERED**.



/s/ Frances M. Tydingco-Gatewood
  Chief Judge
**Dated: Jun 06, 2011**

---

[6] The court notes that even if it reviewed the affidavit for probable cause, a *Franks* hearing would not be warranted. If the omitted facts were included, there would still be a substantial basis from which the issuing magistrate could have found a fair probability that Defendant was concealing ice in his rectal area. *See supra* at 7 n.3.