DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CHRISTOPHER PABLO PAULINO,

Defendant.

Criminal Case No. 10-00062

**ORDER AND OPINION RE: MOTION TO SUPPRESS STATEMENTS**

This case is before the court on a Motion to Suppress Statements ("the Motion") filed by Defendant CHRISTOPHER PABLO PAULINO ("Defendant"). *See* Docket No. 13. After reviewing the filings and relevant case law, and hearing oral argument and witness testimony, the court hereby **DENIES** the Motion and issues the following opinion.

I. **FACTUAL BACKGROUND**

On February 20, 2010, Defendant arrived at AB Won Pat International Airport on a flight originating from the Philippines. Docket No. 17-1 at 1. Upon suspicion that Defendant was concealing ice in his rectal area, Guam Customs and Quarantine Agency ("Customs") officers detained Defendant at the airport. *Id.*

Drug Enforcement Administration ("DEA") Special Agent Kirk Williamson ("Agent Williamson") entered the Customs pat down room where Defendant was being held and read Defendant his *Miranda* rights. *Supp'n Hrg.*, Test. of Agent Williamson (Feb. 17, 2011) (hereinafter *Feb. 17 Hrg.*). Defendant stated that he understood his rights and asserted his right to an attorney;

accordingly, Agent Williamson refrained from questioning Defendant. *Id.*

That same day, Customs Officer Jeffrey Palacios ("Officer Palacios") obtained a warrant to conduct an x-ray examination of Defendant. *See* Docket No. 14 at 16–17. The x-ray results indicated that there was a foreign object in Defendant's rectal area. Docket No. 16 at 2.

On February 22, Defendant (having yet to pass the foreign object) appeared before Judge Elizabeth Barrett-Anderson in the Superior Court of Guam for a continued arraignment and was charged with possession of a controlled substance. Docket Nos. 13 at 3, 17 at 1:26–27. Judge Barrett-Anderson appointed Public Defender Terrance Long ("Attorney Long") as Defendant's attorney and ordered Defendant to remain in the custody of Customs. Docket No. 13 at 3.

On the evening of February 22, Customs Officer Franklin Gutierrez ("Officer Gutierrez") went to check on Defendant, who had still not passed the foreign object. *Feb. 17 Hrg.*, Test. of Officer Gutierrez. Officer Gutierrez told Defendant that he was not going to ask any questions, but he was concerned about Defendant's health and the negative consequences that could occur if Defendant continued to keep the object in his rectum. *Id.* Defendant told Officer Gutierrez that he wanted to speak to Officer Gutierrez's supervisor, Chief Raffaele Sgambelluri. *Id.* Defendant then told Chief Sgambelluri that he knew what he had to do and that he would pass the object. *Id.* When Officer Gutierrez was escorting Defendant to the bathroom, Defendant began crying and making incriminating statements. *Id.* Officer Gutierrez told Defendant that he should wait to speak his attorney, and Defendant stated that he understood and stopped making statements. *Id.* Defendant then went into the bathroom and passed the foreign object. *Id.*

On February 24, 2010, Assistant Attorney General Basil O'Mallan ("Attorney O'Mallan") contacted Attorney Long and told him that Defendant wanted to meet with him. *Id.*, Test. of Attorney Long. Attorney Long contacted Customs, and Officer Palacios informed him that Defendant was willing to cooperate with the officers. *Id.*; *see also* Docket No. 17-1 at 3. Officer Palacios further stated that he told Defendant that he needed to speak with his attorney before answering questions. Docket No. 17-1 at 3. Attorney Long then arranged to meet with Defendant the following day. *Feb. 17 Hrg.*, Test. of Attorney Long.

On February 25, 2010, Attorney Long met with Defendant at the Customs Tiyan office. *Feb. 17 Hrg.*, Test. of Attorney Long. After consulting with Defendant, Attorney Long spoke with Attorney O'Mallan (via telephone) about a plea agreement. *Id.* Based on oral assurances from Attorney O'Mallan that Defendant would only be prosecuted locally and that the minimum sentence would be recommended, Attorney Long told Officer Palacios that Defendant would cooperate. *Id.*, Tests. of Attorney Long and Officer Palacios. Defendant was standing next to Attorney Long when Attorney Long indicated that Defendant would cooperate.[1] *Id.*, Test. of Attorney Long.

Attorney Long then told Defendant that he was leaving and left. *Id.* Shortly thereafter, Officers Palacios and Gutierrez began interviewing Defendant and, after an adequate break, completed the interview the following evening ("the two-day interrogation"). *Id.*, Test. of Officer Palacios. During the two-day interrogation, Defendant confessed to, among other things, the instant offense. *See* Docket No. 17-1 at 9.

## II. DISCUSSION

Defendant moves the court to suppress statements that he made to Customs officers during the two-day interrogation. *See* Docket No. 14. Defendant contends that the statements were obtained in violation of his Fifth and Sixth Amendment rights because (1) Customs officers failed to readvise him of his *Miranda* rights, and (2) he never waived his right to have counsel present during the two-day interrogation.

### A. SUFFICIENCY OF *MIRANDA* WARNING

It is undisputed that Special Agent Williamson advised Defendant of his *Miranda* rights on February 20, 2010. *See* Docket Nos. 17 at 1, 50 at 1. Defendant, however, argues that Customs officers were required to readvise him of his *Miranda* rights prior to beginning the two-day

---

[1] At the Suppression Hearing, Officers Palacios and Gutierrez could not recall if Defendant was standing next to Attorney Long or in a holding cell when Attorney Long indicated that Defendant would cooperate. However, Attorney Long testified that Defendant was in fact standing next to him. As the fact finder, the court determines the credibility of witnesses and finds that Attorney Long's recall of the situation is credible. *See United States v. Wright*, 625 F.3d 583, 603–04 (9th Cir. 2010) (finding that the district court failed to make credibility determinations at the suppression hearing and reversing its suppression ruling).

interrogation.

## 1. APPLICABLE STANDARDS

To comply with the Fifth Amendment protection against self-incrimination, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Accordingly, before a person is interrogated, he must be apprised of his right to remain silent and his right to consult with an attorney and have an attorney present during the interrogation. *Id.* at 467–68.

There is no per se rule as to when or if an accused must be readvised of his *Miranda* rights. *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995) ("The courts have generally rejected a per se rule as to when a suspect must be readvised of his rights . . . ."). Rather, the court must look at the totality of the circumstances and whether the facts "suggest the effectiveness of the earlier *Miranda* warnings was diminished." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128–29 (9th Cir. 2005) (citing *Wyrick v. Fields*, 459 U.S. 42, 48–49 (1982), *Guam v. Dela Pena*, 72 F3d 767, 770 (9th Cir. 1995)).

## 2. DEFENDANT DID NOT NEED TO BE READVISED OF HIS RIGHTS

Defendant relies on the passage of time to support his argument that Customs officers were required to readvise him of his *Miranda* rights prior to beginning the two-day interrogation. *See Supp'n Hrg.*, Arg. of Def. Counsel (May 25, 2011) (hereinafter *May 25 Hrg.*). However, the mere passage of time is insufficient to demonstrate that the effectiveness of the earlier warning was diminished. *See Dela Pena*, 72 F.3d at 770 (approving a fifteen hour lapse between initial warning and questioning); *Andaverde*, 64 F.3d at 1313 (approving a one day lapse); *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968) (finding a warning given three days earlier was adequate).

Although the Ninth Circuit has not approved a five-day lapse between an initial warning and questioning, looking at the totality of the circumstances, there is nothing in the record that indicates that the effectiveness of Agent Williamson's warning was diminished. *See Rodriguez-Preciado*, 399 F.3d at 1129. If anything, the effectiveness of the initial warning was enhanced by: (1) the arraignment on February 22; (2) Officer Gutierrez's reminder to Defendant that he should wait to

speak to his attorney before making statements; and (3) Defendant's consultation with his attorney immediately preceding the two-day interrogation.

Agent Williamson's *Miranda* warning was not stale. Thus, the fact that Customs officers did not readvise Defendant of his *Miranda* rights before beginning the two-day interrogation does not render Defendant's statements inadmissible. However, it is undisputed that Defendant asserted his right to attorney after Agent Williams read the warning. Therefore, whether Defendant's statements are admissible turns on whether Defendant waived his right to have counsel present during the interrogation.

### B. WAIVER OF *MIRANDA*

Defendant contends that the statements made to Customs officers during the two-day interrogation were obtained in violation of his Fifth and Sixth Amendment rights, and therefore inadmissible at trial. Specifically, Defendant argues that he did not waive his right to have his attorney present during the two-day interrogation.

#### 1. APPLICABLE STANDARDS

If an accused asserts his right to an attorney, officers must cease questioning until an attorney is present, unless the accused initiates communication. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (citing *Miranda*, 384 U.S. at 474). The policy underlying the *Edwards* rule is "to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Montejo v. Louisiana*, at 8 (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)) (internal quotation marks omitted).

If, after invoking his right to counsel, a defendant makes statements to officers without his attorney present, the court must engage in a two-step analysis to determine if statements are admissible. The court must determine whether (1) "the accused himself initiate[d] further communication, exchanges, or conversations with the [officers]"; and (2) the accused "voluntarily, knowingly and intelligently" waived his right to counsel. *See United States v. Jennings*, 515 F.3d 980, 986 (9th Cir. 2008) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983); *Miranda*, 384 U.S. at 444) (internal quotations omitted).

Page 5 of 10

Under the Sixth Amendment, once adversary judicial proceedings commence, a defendant has a guaranteed "right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. ___, ___, 129 S. Ct. 2079, 2085 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227–28 (1967)). Interrogation by government officers is considered such a "critical" stage. *See id.* (citing *Massiah v. United States*, 377 U.S. 201, 204–05 (1964); *United States v. Henry*, 447 U.S. 264, 274 (1980)).

The protection of the Fifth Amendment right to have counsel present during an interrogation under *Miranda* and *Edwards* adequately protects a defendant's right to have counsel present under the Sixth Amendment. *See id.* at ___, 129 S. Ct. at 2090 (overruling *Michigan v. Jackson*, 475 U.S. 625 (1986)). Thus, the court's analysis and findings regarding an alleged Fifth Amendment violation simultaneously addresses an alleged Sixth Amendment violation. *See id.*; *see also Kemp v. Ryan*, No. 08-99030, 2011 U.S. App. LEXIS 8663, at *30 n.5 (9th Cir. Apr. 28, 2011) ("The Court commented that because the right to be free from compelled self-incrimination and the right to counsel are waived using the same procedure, . . . doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver.") (quoting *Montejo*, 556 U.S. at ___, 129 S. Ct. at 2090) (alteration in original) (internal quotation marks omitted).

### 1. <u>DEFENDANT INITIATED COMMUNICATION WITH OFFICERS</u>

A defendant initiates communication with an officer when "his words and deeds . . . can be 'fairly said to represent a desire' to 'open up a more generalized discussion relating . . . to the investigation.'" *Mickey v. Ayers*, 606 F.3d 1223, 1235 (9th Cir. 2010) (quoting *Bradshaw*, 462 U.S. at 1045). However, statements and questions regarding "routine incidents of the custodial relationship" are generally insufficient to initiate communication. *Bradshaw*, 462 U.S. at 1044–45 (holding that defendant initiated further communication by merely asking, "[w]ell, what is going to happen to me now?")

In this case, there are two instances in which Defendant initiated communication with Customs officers. First, Defendant initiated communication on February 22, when he told Officer

Sgambelluri that he knew what he had to do and that he would pass the foreign object, and then made incriminating statements to Officer Gutierrez prior to passing the foreign object.

Second, Defendant initiated communication through his attorney on February 25, when Attorney Long indicated to Customs officers that Defendant would cooperate with them. Defendant was standing next to Attorney Long and did not refute Attorney Long's statement that Defendant was going to cooperate.[2] In both of these instances, Defendant initiated communication in that his words and conduct indicated a desire to discuss the investigation.

Defendant relies on *Edwards* for his contention that Customs officers could not question him without his attorney present because he invoked his right to an attorney. *See* Docket No. 50. However, in putting forth his argument, Defendant overstates the prophylactic rule and glosses over its caveat—officers may not question a defendant who invokes his right to an attorney without his attorney present, "*unless [Defendant] himself initiates further communication.*" *Edwards*, 451 U.S. at 482 (emphasis added). As discussed above, Defendant initiated communication with Customs officers. Thus, whether Defendant's statements are admissible now turns on whether Defendant waived his right to have counsel present during the two-day interrogation.

### 2. DEFENDANT VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVED HIS RIGHT TO COUNSEL

The Government has the burden of proving by a preponderance of the evidence that Defendant waived his right to counsel. *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986). A waiver need not be express, *North Carolina v. Butler*, 441 U.S. 369, 373 (1979), however, merely responding to police-initiated questioning is insufficient to establish a waiver. *Edwards*, 451 U.S. at 484.

The court must look at "the totality of the circumstances, including the background, experience, and conduct of defendant" to determine if a waiver is made voluntarily, knowingly, and intelligently. *Rodriguez-Preciado*, 399 F.3d at 1127 (quoting *United States v. Doe*, 155 F.3d 1070,

---

[2] Even if Defendant was not standing next to Attorney Long at this time, the fact that Attorney Long told Customs Officers that Defendant would cooperate was sufficient to find that Defendant initiated communication through his attorney.

1074 (9th Cir.1998)) (internal quotation marks omitted).

A waiver is voluntary[3] if the confession was "the product of a free and deliberate choice rather than coercion or improper inducement," and it is knowing and intelligent if "it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 1127–28 (quoting *Doe*, 155 F.3d at 1074) (internal quotation marks omitted). *See also United States v. Mejia*, 559 F.3d 1113, 1117 (9th Cir. 2009) ("The voluntariness of a waiver depends on the absence of police overreaching.") (citing *Connelly*, 479 U.S. at 170).

There is nothing in the record indicating that Defendant was coerced or improperly induced into answering Customs officers' questions.[4] In fact, the record reflects quite the opposite. Customs officers exercised an abundance of caution in observing Defendant's rights. Even after Defendant initiated communication, Customs officers advised him that he should speak to his attorney before making statements. Defendant freely chose to cooperate with Customs officers.

The fact that Defendant asserted his right to an attorney and remained silent after Agent Williamson read him his rights indicates that Defendant understood his rights. Defendant later consulted with Attorney Long and was standing next to him when Attorney Long told the Customs Officers that Defendant was going to cooperate. There is nothing in the record indicating that Defendant objected to Attorney Long's statement or otherwise acted to the contrary. Defendant then

---

[3] The government applies 18 U.S.C. § 3501 in its analysis of whether Defendant's confession was voluntary. *See* Docket No. 48. However, in *Dickerson v. United States*, the Supreme Court held that the statute was unconstitutional. 530 U.S. 428 (2000). Accordingly, the court does not apply the statute in its analysis, but rather relies on case law to determine whether Defendant's waiver was voluntary.

[4] Defendant argues that the length of his detention essentially amounted to coercion. *May 25 Hrg.*, Arg. of Def Counsel. The court is unpersuaded by this argument. The x-ray results indicated that there was a foreign object in Defendant's rectal area, thus making it reasonable for Customs to detain him until he had a bowel movement. *See Montoya de Hernandez*, 473 U.S. at 544 ("[T]he detention of a suspected alimentary canal smuggler at the border is analogous to the detention of a suspected tuberculosis carrier at the border: both are detained until their bodily processes dispel the suspicion that they will introduce a harmful agent into this country.") Any discomfort Defendant may have suffered as he suppressed his bowel moving tendencies was not coercion. Rather, it was self-inflicted in that it "resulted solely from the method by which [Defendant] chose to smuggle illicit drugs into this country." *See id.*

answered questions from Customs officers over a period of two days. While merely answering questions is insufficient to establish a waiver, Defendant clearly did more than just answer questions.

Defendant argues that "the fact that [he] spoke with his attorney did not constitute a waiver of his Fifth Amendment rights." Docket No. 50 at 3. In *Minnick v. Mississippi*, the Supreme Court held that after a defendant invokes his right to counsel, officers cannot reinitiate questioning without counsel present even if the defendant has consulted with his attorney. 498 U.S. 146, 153 (1990). As discussed in the foregoing, Defendant did more than just speak to his attorney.

In *Minnick*, the defendant asserted his right to an attorney and then spoke with his lawyer two or three times. *Id.* at 149. Subsequent to that, a deputy sheriff went to the jail to question the defendant, and the jailers told the defendant that he "would have to talk" to the sheriff and that he "could not refuse." *Id.* (internal quotation marks omitted). The state supreme court found that because an attorney was made available to the defendant, his Fifth Amendment right to counsel was satisfied, and thus the court did not address the issue of initiation. *Id.* at 150.

This case is distinguishable from *Minnick* in two major respects. First, and most importantly, unlike the defendant *Minnick*, Defendant initiated communication with the Customs officers. *Minnick* reiterated that a defendant was not foreclosed from waiving his right to counsel under *Edwards*, provided that the defendant is the one who initiates the communication. *Id.* at 156.

Second, the nature of Defendant's interaction with his attorney is markedly different. In *Minnick*, officers coerced the defendant into answering questions when his attorney was not present. Although the defendant consulted with his attorney on two or three occasions, the *Minnick* court was concerned that merely consulting with an attorney would "not remove the suspect from persistent attempts by officials to persuade him to waive his rights, or from the coercive pressures that accompany custody." *Id.* at 153.

Here, the record wholly lacks the "coercive pressures" underlying the *Minnick* decision. Defendant consulted with his attorney immediately prior to the interrogation and was even standing next to Attorney Long when Attorney Long indicated to Customs officers that Defendant was going to cooperate. Defendant had the benefit of his counsel when he made the decision to cooperate with

Customs officers. Thus, Defendant's reliance on *Minnick* is misplaced.

### 3. CONCLUSION

Defendant was advised of his *Miranda* rights, and Customs officers did not need to readvise him of his rights prior to commencing the two-day interrogation. Although Defendant asserted his right to an attorney, he initiated communication with Customs officers and then voluntarily, knowingly, and intelligently waived his right to have counsel present during the two-day interrogation. Accordingly, the court hereby **DENIES** the Motion to Suppress Statements.

Furthermore, the court amends the Amended Trial Scheduling as follows:

- Trial Documents Filing Deadline:   June 10, 2011, at 3:00 p.m.
- Pretrial Conference:   June 13, 2011, at 9:00 a.m.
- Jury Trial:   June 21, 2011, at 9:30 a.m.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Jun 07, 2011**